IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JEFFERY BOONE, | : | |
| Plaintiff, | : | |
| VS. | : | CIVIL ACTION FILE NO. |
| | : | **1: 06-CV-103 (WLS)** |
| RON HANNAH, and | : | |
| JOSH BALDREE, | : | |
| Defendants. | : | |

## RECOMMENDATION

Presently pending in this *pro se* prisoner §1983 action is defendants' motion for summary judgment (doc. 18). The undersigned advised plaintiff of the filing of the motion for summary judgment, and the necessity of filing a response thereto by an order dated April 23, 2007; however, plaintiff has failed to file a response to the motion in any way.

In his unverified complaint, plaintiff claims that on July 5, 2006, defendants, two officials at Ben Hill County Jail, used excessive force against him by using a taser on him, and then failed to provide the necessary medical care to remove the metal barb from the taser despite asking three times. Plaintiff states the metal prong was finally removed some 22 hours later.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

According to the affidavit of defendant Baldree (Affidavit, doc. 18), he and other officers had conducted searches of several inmate cells, including the plaintiff's cell, because of suspicions that someone had a shank or other weapons. This search was conducted while plaintiff and other inmates were outside during recreation. When plaintiff returned to his cell, he began to complain of the search and that his belongings were not placed back in position as they

were before the search.  Baldree ordered plaintiff to return to his cell, but plaintiff refused.  Some other inmates were also loudly complaining and refused to enter their cell.  Baldree ordered plaintiff to enter his cell for the second time.

Defendant Hannon heard the commotion and went to investigate.  (Affidavit, doc. 18). Hannon saw plaintiff standing outside his cell, yelling and cursing at Baldree, refusing to enter his cell.  Hannon ordered plaintiff to enter his cell, telling him he would discuss the situation with him later.  Plaintiff turned to Hannon waiving his arms, cursing and refusing to enter his cell.  At least two other inmates remained unsecured.

According to his affidavit, Hannon was fearful of the situation getting out of control with plaintiff and the other inmates who were not yet secured in their cell, so he fired one taser cartridge at plaintiff; plaintiff dropped to the ground.  Defendant Hannon then ordered plaintiff into his cell, and plaintiff complied.

Apparently, one of the barbs from the taser lodged in plaintiff's arm, and both defendants Baldree and Hannon stated they were trained in the removal of such, and offered to remove the barb from plaintiff, but plaintiff requested that a nurse remove the barb.  Hannon states that he then returned to his post.  Baldree told plaintiff that he had to return all of the inmates to their cells before he could take plaintiff to the medical section.  Approximately 15 to 20 minutes later, Baldree went by the infirmary to speak with the nurse about the removal, but the nurse refused due to lack of training for the removal.  Baldree reported this back to plaintiff, and again offered to remove the barb; however, plaintiff again refused.  The next morning, plaintiff agreed to allow Baldree to remove the probe in the presence of the nurse.

According to the nurse on duty at the time, Debbie Floyd, plaintiff was brought to the

infirmary on July 6, 2006, but she refused to remove the barb from plaintiff because she was not trained to do so. (Affidavit Debbie Floyd, doc. 18). Therefore, the jailer removed the barb from plaintiff's arm. Floyd states in her affidavit that plaintiff never complained of any issues related to the barb or its removal on the date of the removal or on any subsequent visits to the infirmary. According to Baldree's affidavit, the nurse applied an alcohol swab to the area and placed a band-aid on the site.

It is important to note that plaintiff has failed to counter any of the evidence presented by defendants, either by a response to the motion for summary judgment or by a verified complaint.

*Denial of Medical Care*

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris, 941 F.2d at 1505. It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference

4

to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." McElligott v. Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

"[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Hill v. DeKalb RYDC, 40 F.3d 1176, 1191 (11th Cir. 1994). The "seriousness" of an inmate's medical needs may be decided by reference to the effect of delay in treatment. Hill, 40 F.3d at 1188. Where the delay in treatment results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id. Further, the Eleventh Circuit has held that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir.1994). Consequently, a delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. Hill, 40 F.3d at 1189.

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted).

At most, plaintiff has alleged a de minimis injury, as the only treatment required was an alcohol swab and a band aid. Plaintiff never complained of any difficulty related to this injury, either at the time of the removal of the taser barb, or on any subsequent date. Therefore, any

delay that resulted from plaintiff's own refusal to have trained personnel remove the barb was insignificant and entirely of plaintiff's own making. Consequently, the undersigned does not find that plaintiff has shown a genuine issue of material fact of deliberate indifference to a serious medical need.

*Excessive Force*

The Eighth Amendment's proscription of cruel and unusual punishments governs prison officials' use of force against convicted inmates. See <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). When the conduct in question involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm." <u>Whitley</u>, 475 U.S. at 320-21, 106 S.Ct. 1078; see also <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Discussing this heightened specific-intent requirement in <u>Whitley</u>, the Supreme Court reiterated that force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." 475 U.S. at 319, 106 S.Ct. 1078. Reviewing the force used to quell a prison riot in <u>Whitley</u>, the Court explained that "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Id. at 320-21, 106 S.Ct. 1078.

6

Subsequently, in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court extended Whitley 's holding outside the prison-riot context and applied the same heightened intent requirement to force used as a prophylactic, preventive measure. See Whitley, 475 U.S. at 322, 106 S.Ct. 1078 (acknowledging the distinction). The Hudson Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good- faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7, 112 S.Ct. 995. The Court reasoned that even absent the exigency present during a riot-like disturbance, " ' "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." ' " Hudson, 503 U.S. at 7, 112 S.Ct. 995 (quoting Whitley, 475 U.S. at 321-22, 106 S.Ct. 1078 (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979))). Thus, Hudson dictates that Whitley 's standard--force applied maliciously and sadistically to cause harm--applies to all claims that prison officials used excessive force against convicted prisoners.

In addition to defining the mental state required, Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to

them." Whitley, 475 U.S. at 321, 106 S.Ct. 1078; see also Hudson, 503 U.S. at 7, 112 S.Ct. 995. Whitley also narrows the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322, 106 S.Ct. 1078

As the Supreme Court stated in Rhodes v. Chapman, 452 U.S. 337, 349, n. 14, 101 S.Ct. 2392, 2400, n. 14, 69 L.Ed.2d 59 (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior," Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

Here, plaintiff refused three separate orders to return to his cell, was yelling and cursing at defendants, and was disrupting other inmates, at least two of which were not safely confined in

their cells. Hannon, in his affidavit, stated he decided to use the taser on plaintiff in order to diffuse the situation as quickly as possible. Moreover, all of the evidence indicates that the injury to plaintiff was de minimus, requiring only an alcohol swab and a band aid, and there is no evidence that plaintiff complained of the injury beyond the removal of the barb. Consequently, the undersigned finds that plaintiff has failed to counter defendants' properly supported motion for summary judgment, has failed to show a material issue of fact related to this or any other issue.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion for summary judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 31st day of July, 2007.

                                                  //S Richard L. Hodge
                                                  RICHARD L. HODGE
                                                  UNITED STATES MAGISTRATE JUDGE

msd